THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. WILLIAM A. MILLER, Defendant-Appellee.

Fourth District   No. 4—02—0953

Opinion filed January 15, 2004.

Thomas J. Brown, State's Attorney, of Pontiac (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Charles M. Schiedel and Lawrence Bapst (argued), both of State Appellate Defender's Office, of Springfield, for appellee.

JUSTICE APPLETON delivered the opinion of the court:

The State charged defendant, William A. Miller, with unlawful possession with intent to deliver cannabis (720 ILCS 550/5(c) (West 2002)) and unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2002)). Defendant filed a motion to quash the arrest and suppress evidence. At the conclusion of an evidentiary hearing, the trial court granted the motion. On appeal, the State argues the trial court erred in granting defendant's motion and suppressing evidence. We affirm.

## I. BACKGROUND

In August 2002, the State charged defendant by information with one count of unlawful possession with intent to deliver cannabis (720 ILCS 550/5(c) (West 2002)), alleging he knowingly and unlawfully possessed, with intent to deliver, more than 10 grams, but not more than 30 grams, of a substance containing cannabis. The State also charged him with one count of unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2002)), alleging he knowingly possessed a gold metal smoking pipe with the intent to use it to smoke cannabis.

In October 2002, defendant filed a motion to quash the arrest and

suppress evidence. He alleged that at the time of the stop, neither he nor any of the car's occupants had committed a crime or violated any traffic laws. Further, he argued the police officer had stopped and detained him without probable cause.

In November 2002, the trial court held a hearing on defendant's motion. Defense counsel called Daniel Davis, a police officer with the Pontiac police department. Davis testified he stopped a car driven by defendant at approximately 3:56 p.m. on August 24, 2002. Approximately an hour before the stop, Davis was advised of an anonymous tip that defendant had been participating in illegal activity involving cannabis. Davis was therefore "looking to speak" with defendant, whose vehicle he saw parked at a residence in Pontiac. After following defendant, Davis pulled him over because of "a defective muffler, loud exhaust system." He characterized the muffler as "abnormally loud, and when the vehicle accelerated, it was even louder, a lower guttural sound."

After stopping defendant's car, Davis approached and spoke with defendant regarding the muffler. He obtained defendant's driver's license and insurance card and returned to his squad car, while another officer spoke with two passengers in the car. Having determined that defendant had a valid license, Davis wrote a warning for the muffler, returned to defendant's car, and (according to Davis's testimony) handed those documents to defendant.

Defense counsel asked Davis:

"Q. *** So, traffic stop completed at that point, you're giving him the warning and giving him his insurance card and his license back?

A. That is correct.

Q. At some point, did someone ask [defendant] to remove himself from the vehicle?

A. Yes, I did, so I could speak with him regarding the earlier complaint.

Q. *** Was this after you had given him the insurance card and license and warning ticket?

A. Yes.

Q. And what was your motivation in asking him to remove himself from the vehicle?

A. Just so I could speak with him separate from his two passengers regarding the information that we had received."

Davis testified that Sergeant Hugh Roop was observing the stop in a separate vehicle approximately 200 feet away. When defendant got out of the car and walked toward Davis, Roop warned Davis, over the radio, that he saw "some type of shiny object similar to a knife, a large knife, in [defendant's] pocket." Davis asked defendant about the

object, which, defendant admitted, was a knife. Davis removed a "large sheath knife" and set it on the hood of the car "for officer safety." Davis asked defendant if there was anything else on him he should know about, and defendant told him "about the cannabis and other paraphernalia in his pocket." Davis then searched defendant for other potential weapons and found a bag of cannabis and a gold smoking pipe. He placed defendant under arrest. A search of defendant's car revealed a "large amount of cannabis."

Defense counsel then played a videotape, shot from Davis's squad car, showing the traffic stop. Davis narrated the events up to when he pulled defendant's car over. The videotape showed Davis approaching the driver's side of the car and another police officer, Adam Fulkerson, on the passenger side. Thereafter, defense counsel fast-forwarded the tape to when Davis returned to defendant's car, because the trial court wanted to hear that conversation. Upon watching that sequence, the court remarked that Davis appeared to say, " '[W]ould you step on out, would you step on out for a second[?']'"

The court continued, in part, as follows:

"Not wanting to cut anybody short, but the [a]ppellate [c]ourt when they get this will say, at that instant he was seized, it's an absolute seizure of the defendant. The [a]ppellate [c]ourt will say, this was a good stop, if you have excessive or unusual noise out of your muffler, the police can stop. The [a]ppellate [c]ourt will say the traffic stop was *** 100[%] completed. ***

*** But, I mean, we've got a good stop, we've got the traffic stop completed, we've got the defendant in the car. The other officers didn't add a lot other than in his mind, of the defendant or anybody else, this looks like it's pretty serious. But this amounts to an instruction by the officer to get out of the car. He is seized at that point, and it's at that point that the stop is tainted."

The trial court granted the State permission to cross-examine Davis. Davis agreed it appeared, from the videotape, that he said to defendant, "Hey, William, could you hop on out for me for a second?" He testified that if defendant had stated he did not want to get out of the car, the stop "would have been completed" and he would have let him go. The videotape showed that after Davis asked defendant to "hop on out," Davis walked away from the car. Davis did not open the door or order defendant out of the car. Davis testified that defendant exited his car, after which Davis removed the knife from defendant's belt and asked him if he had anything else he should know about, whereupon defendant "voluntarily told [him] that he had a pipe and a bag of weed in his left pocket."

Watching the videotape, one can see Davis approaching the driver's

window of defendant's car, collecting documents from defendant, and returning, documents in hand, to his squad car. Then, after a few minutes, one can see Davis walking back to defendant's car, documents in hand, and, without handing defendant anything, asking him to get out.˙As defendant gets out of the car and follows Davis to the rear of the car, Davis still has the documents in his hand.

The trial court granted defendant's motion to suppress, characterizing this situation "as a direction to get out of the car." The State filed a certificate of substantial impairment and appealed the trial court's ruling pursuant to Supreme Court Rule 604(a) (188 Ill. 2d R. 604(a)).

## II. ANALYSIS

The State argues the trial court erred in granting defendant's motion to quash the arrest and suppress evidence. We disagree.

### A. Standard of Review and Burden of Proof

■ The appeal of a ruling on a motion to suppress presents mixed questions of law and fact. *People v. Gherna*, 203 Ill. 2d 165, 175, 784 N.E.2d 799, 805 (2003). We will not disturb the trial court's factual determinations and assessment of witnesses' credibility unless they are manifestly erroneous. *People v. Anthony*, 198 Ill. 2d 194, 200-01, 761 N.E.2d 1188, 1191 (2001). We review *de novo* the trial court's ultimate decision of whether to suppress the evidence. See *People v. Crane*, 195 Ill. 2d 42, 51, 743 N.E.2d 555, 562 (2001).

■ On a motion to suppress evidence, the defendant has the burden of proving the search and seizure were unlawful. 725 ILCS 5/114—12(b) (West 2002). "However, once the defendant makes a *prima facie* showing of an illegal search and seizure, the burden shifts to the State ˙ to produce evidence justifying the intrusion." *People v. Ortiz*, 317 Ill. App. 3d 212, 220, 738 N.E.2d 1011, 1018 (2000).

### B. The Traffic Stop

■ The fourth amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Similarly, the Illinois Constitution affords citizens with "the right to be secure in their persons, houses, papers[,] and other possessions against unreasonable searches, [and] seizures." Ill. Const. 1970, art. I, § 6. Our supreme court has interpreted the search and seizure clause of section 6 in a manner consistent with the United States Supreme Court's fourth amendment jurisprudence. *People v. Gonzalez*, 204 Ill. 2d 220, 224, 789 N.E.2d 260, 264 (2003).

■ A temporary detention of an individual during a vehicle stop constitutes a "seizure" of his or her person within the meaning of the fourth amendment, even if the stop is brief and for a limited purpose. *Whren v. United States*, 517 U.S. 806, 809-10, 135 L. Ed. 2d 89, 95, 116 S. Ct. 1769, 1772 (1996). The Supreme Court has held:

> "An automobile stop is thus subject to the constitutional impera-
> tive that it not be 'unreasonable' under the circumstances. As a
> general matter, the decision to stop an automobile is reasonable
> where the police have probable cause to believe that a traffic viola-
> tion has occurred." *Whren*, 517 U.S. at 810, 135 L. Ed. 2d at 95,
> 116 S. Ct. at 1772.

Our own supreme court has explained:

> "Because a traffic stop is more analogous to a *Terry* investigative
> stop (see *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868
> (1968)) than to a formal arrest, the reasonableness of a traffic stop
> is analyzed under *Terry* principles. [Citation.] A *Terry* analysis
> involves a dual inquiry: '(1) "whether the officer's action was justi-
> fied at its inception," and (2) "whether it was reasonably related in
> scope to the circumstances which justified the interference in the
> first place." ' *Gonzalez*, 204 Ill. 2d at 228, [789 N.E.2d at 266,]
> quoting *Terry*, 392 U.S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at
> 1879." *People v. Bunch*, 207 Ill. 2d 7, 13-14, 796 N.E.2d 1024, 1029
> (2003).

■ In the case *sub judice*, the legality of the initial stop of defendant's vehicle under the first prong of *Terry* is not at issue. Both parties agree Davis was justified in stopping defendant's vehicle because of his observation of a traffic violation. He pulled defendant over because his car had an "abnormally loud" muffler, a violation of section 12—602 of the Illinois Vehicle Code (625 ILCS 5/12—602 (West 2002)). See also *People v. Sorenson*, 196 Ill. 2d 425, 433, 752 N.E.2d 1078, 1084 (2001) (stop of vehicle justified based on officer's observa-
tion of traffic violation). Thus, Davis had probable cause to initiate a valid traffic stop.

## C. The Completion of the Traffic Stop

■ Under the second prong of the *Terry* analysis, a court considers the length of the detention and the manner in which it was carried out. *Bunch*, 207 Ill. 2d at 14, 796 N.E.2d at 1029. The Supreme Court has stated "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238, 103 S. Ct. 1319, 1325 (1983) (plurality opinion). Upon initiating a minor traffic stop, a police officer may briefly detain the driver to request his driver's license, determine its validity and, under certain circumstances,

conduct a speedy warrant check. *Ortiz*, 317 Ill. App. 3d at 220, 738 N.E.2d at 1018. After stopping defendant, Davis rightfully obtained defendant's driver's license and insurance information to verify in his squad car.

Once a check of a driver's license and any warrant information is completed, "if no further suspicion is aroused, the traffic stop must cease and the individual should no longer be detained." *Ortiz*, 317 Ill. App. 3d at 220, 738 N.E.2d at 1018. The police officer should then issue a ticket or warning and allow the driver to continue on his or her way. See *People v. Koutsakis*, 272 Ill. App. 3d 159, 164, 649 N.E.2d 605, 609 (1995) (Third District).

■ Here, Davis testified he returned defendant's driver's license and insurance card *prior* to asking defendant to step out of his car. If such was the case, the traffic stop ended when Davis returned the driver's license and insurance card and gave defendant either a verbal or written warning. See *People v. Brownlee*, 186 Ill. 2d 501, 516, 713 N.E.2d 556, 565 (1999) (traffic stop concluded when officer returned driver's license and insurance card and told the defendant no citations would be issued); *Ortiz*, 317 Ill. App. 3d at 221, 738 N.E.2d at 1018 (investigative stop complete after officer returned the defendant's driver's license and issued a warning).

Even if, as the videotape seems to show, Davis did not return the license and insurance card prior to requesting defendant to exit the vehicle, the traffic stop was nevertheless complete. When Davis returned to defendant's car, he had completed his determination of the motor vehicle offense and verification of defendant's driver's license and insurance information. He had nothing else to do *at that point* other than return defendant's documents to him. We must assess Davis's direction or request to defendant to get out of the car according to the second prong of the *Terry* analysis, as used in *Gonzalez*.

As the trial court correctly found, the initial traffic stop, whether pretextual or not, was valid. The scope of the permissible "seizure" of defendant was limited, however, to the traffic offense, absent other articulable facts to justify prolonging the seizure. *Bunch*, 207 Ill. 2d at 16, 796 N.E.2d at 1036.

We find the rule the supreme court expressed in *Brownlee*, 186 Ill. 2d at 517, 713 N.E.2d at 564, to be applicable here. In *Brownlee*, 186 Ill. 2d at 520, 713 N.E.2d at 565, the police completed all that was necessary for their traffic stop. They then delayed allowing the vehicle to leave before asking for permission to search the car. *Brownlee*, 186 Ill. 2d at 520, 713 N.E.2d at 565-66. The supreme court agreed that during the delay, the driver of the car could not have believed himself free to leave. *Brownlee*, 186 Ill. 2d at 520, 713 N.E.2d at 566.

The videotape here shows that while Davis had nothing more to do to complete the traffic stop, he held on to defendant's documents, thereby preventing him from leaving. See *People v. Hardy*, 142 Ill. App. 3d 108, 118, 491 N.E.2d 493, 500 (1986) (retention of driver's license tends to negate freedom to leave). His request for defendant to exit the car therefore was the same as the request in *Brownlee* to search the car, *i.e.*, without articulable facts justifying a *Terry* investigative seizure. The subsequent search is therefore tainted, and the fruits thereof were properly suppressed. See *Wong Sun v. United States*, 371 U.S. 471, 484, 9 L. Ed. 2d 441, 453, 83 S. Ct. 407, 416 (1963).

## III. CONCLUSION

For the foregoing reasons, the decision of the trial court granting defendant's motion to suppress is affirmed.

Affirmed.

STEIGMANN, J., concurs.

JUSTICE TURNER, dissenting:

Although I agree with the majority that Officer Davis had probable cause to initiate a valid traffic stop, I disagree with the majority's conclusion that Officer Davis's request for defendant to exit the car tainted the subsequent search. Therefore, I dissent.

This case is factually distinguishable from our supreme court's decision in *Brownlee*, relied upon by the majority. In that case, police officers stopped a vehicle and approached the car on both sides. *Brownlee*, 186 Ill. 2d at 506, 713 N.E.2d at 559. The officers obtained the identities of the occupants and checked for and found no outstanding warrants. *Brownlee*, 186 Ill. 2d at 506, 713 N.E.2d at 559. The officers decided not to issue any citations, but they did agree to ask the driver for permission to search the car. *Brownlee*, 186 Ill. 2d at 506, 713 N.E.2d at 559. One officer returned to the driver his license and insurance card and explained that no citations would be issued. *Brownlee*, 186 Ill. 2d at 506, 713 N.E.2d at 559. Thereafter, the officers stood near the car's doors for about two minutes and said nothing. *Brownlee*, 186 Ill. 2d at 520, 713 N.E.2d at 565-66. After the pause, the officer asked the driver to search the vehicle, and the subsequent search revealed controlled substances. *Brownlee*, 186 Ill. 2d at 506-07, 713 N.E.2d at 559-60.

This case is also factually distinguishable from this court's opinion in *Ortiz*. In that case, an officer with the Illinois State Police stopped

the defendant driver for speeding and asked him for his driver's license and insurance information, which defendant provided. *Ortiz*, 317 Ill. App. 3d at 215, 738 N.E.2d at 1014. After asking general questions concerning the driver's destination and the ownership of the vehicle, the officer returned to his squad car and ran a criminal history check. *Ortiz*, 317 Ill. App. 3d at 215, 738 N.E.2d at 1014-15. The officer then decided to call in a canine unit, which arrived prior to the officer's receipt of the defendant's criminal history or the completion of his paperwork. *Ortiz*, 317 Ill. App. 3d at 215-16, 738 N.E.2d at 1015. The officer walked back to the truck and asked the defendant to exit the vehicle. *Ortiz*, 317 Ill. App. 3d at 216, 738 N.E.2d at 1015. Thereafter, the officer issued the defendant a warning and returned his license, and, according to his testimony, the traffic stop was complete at that time. *Ortiz*, 317 Ill. App. 3d at 216, 738 N.E.2d at 1015. However, the officer then asked questions of the defendant, and after he refused to consent to a search of the truck, the canine unit eventually alerted to drugs in the vehicle. *Ortiz*, 317 Ill. App. 3d at 216-17, 738 N.E.2d at 1015-16.

In the case *sub judice*, however, Officer Davis did not ask defendant to step out of the car after he returned his license and insurance card. Nor did Officer Davis explain that citations would or would not be issued prior to asking defendant to exit the vehicle. Based on the videotape evidence, the investigative stop of defendant had not ended, as the stops had in *Brownlee* and *Ortiz*, and Officer Davis could have asked defendant to exit the vehicle. During a lawful traffic stop, a police officer may order the driver out of the vehicle (*Pennsylvania v. Mimms*, 434 U.S. 106, 111, 54 L. Ed. 2d 331, 337, 98 S. Ct. 330, 333 (1977)) as well as the passengers (*Maryland v. Wilson*, 519 U.S. 408, 415, 137 L. Ed. 2d 41, 48, 117 S. Ct. 882, 886 (1997)). See *Sorenson*, 196 Ill. 2d at 433, 752 N.E.2d at 1084 ("following a lawful traffic stop, police may, as a matter of course, order the driver and any passengers out of the vehicle pending completion of the stop"). Thus, as no delay existed here, the majority's conclusion that the request for defendant to exit the car is the same as that in *Brownlee* is erroneous.

At the hearing, Officer Davis testified his reason for asking defendant to exit the car was "to speak with him about the complaint" involving his alleged cannabis activity. This, however, is not fatal to the State's case under our fourth amendment analysis. In *Ohio v. Robinette*, 519 U.S. 33, 35, 136 L. Ed. 2d 347, 352, 117 S. Ct. 417, 419 (1996), Deputy Roger Newsome stopped the defendant, Robert Robinette, for speeding. Newsome received the defendant's license and ran a computer check. *Robinette*, 519 U.S. at 35, 136 L. Ed. 2d at 352, 117 S. Ct. at 419. Deputy Newsome then asked the defendant to exit his

car, issued him a verbal warning, and returned his license. *Robinette*, 519 U.S. at 35, 136 L. Ed. 2d at 352, 117 S. Ct. at 419. Thereafter, Newsome asked the defendant if he was carrying any contraband, and the defendant replied he was not. *Robinette*, 519 U.S. at 35-36, 136 L. Ed. 2d at 352, 117 S. Ct. at 419. Deputy Newsome then received the defendant's consent to search his car, and the officer found controlled substances. *Robinette*, 519 U.S. at 36, 136 L. Ed. 2d at 352, 117 S. Ct. at 419.

The Supreme Court found the fourth amendment does not require a police officer to advise a lawfully seized defendant that he is free to go before a consent to search will be deemed voluntary. *Robinette*, 519 U.S. at 39-40, 136 L. Ed. 2d at 355, 117 S. Ct. at 421. The Supreme Court also noted the Supreme Court of Ohio, in ruling the search resulted from an unlawful detention, held that Deputy Newsome had returned to the defendant's car and asked him to exit, after he had determined not to give him a ticket. *Robinette*, 519 U.S. at 38, 136 L. Ed. 2d at 353-54, 117 S. Ct. at 420. The Supreme Court, however, found "the subjective intentions of the officer did not make the continued detention of [the defendant] illegal under the [f]ourth [a]mendment." *Robinette*, 519 U.S. at 38, 136 L. Ed. 2d at 354, 117 S. Ct. at 420. Moreover, the Supreme Court stated "there is no question that, in light of the admitted probable cause to stop Robinette for speeding, Deputy Newsome was objectively justified in asking Robinette to get out of the car, subjective thoughts notwithstanding." *Robinette*, 519 U.S. at 38, 136 L. Ed. 2d at 354, 117 S. Ct. at 421.

Based on the foregoing, Officer Davis could ask defendant to exit his vehicle prior to the stop's completion notwithstanding his subjective intentions because defendant's vehicle had been lawfully detained for a traffic violation and defendant could have been ordered out prior to the stop's conclusion. See *Robinette*, 519 U.S. at 38, 136 L. Ed. 2d at 354, 117 S. Ct. at 420 (continued detention of the defendant based on officer's subjective intentions did not violate fourth amendment); *United States v. Mendenhall*, 446 U.S. 544, 554 n.6, 64 L. Ed. 2d 497, 509 n.6, 100 S. Ct. 1870, 1877 n.6 (1980) (the subjective intentions of a police officer are irrelevant to a fourth amendment analysis, except to the extent they have been communicated to the defendant). Thus, the effect of the majority's holding is to ignore the established precedent of the United States Supreme Court.

In *People v. Staley*, 334 Ill. App. 3d 358, 360, 778 N.E.2d 362, 363-64 (2002), a Pontiac police officer pulled a driver over for operating a vehicle with a suspended registration and later found the driver had no insurance. The police officer sat in his squad car to run a computer check and to write out two citations and then returned to

the driver's vehicle to ask her to get in the squad car to issue the citations. *Staley*, 334 Ill. App. 3d at 361, 778 N.E.2d at 364. The officer then asked the driver for her consent to search the vehicle, which she gave. *Staley*, 334 Ill. App. 3d at 361, 778 N.E.2d at 364. The officer testified about 18 minutes elapsed from the stop of the car until he issued the citations and received the driver's consent to search. *Staley*, 334 Ill. App. 3d at 361, 778 N.E.2d at 364.

This court held the 18-minute traffic stop was reasonable, not unduly long, and affirmed the defendant passenger's conviction for possession of a controlled substance. *Staley*, 334 Ill. App. 3d at 366-67, 369, 778 N.E.2d at 368-69, 370. Thus, an officer's request that a driver step out of the vehicle to issue a citation does not impermissibly extend the traffic stop. The majority here would conclude the officer in *Staley* could not have asked the defendant to get in his squad car to issue the citations because "the traffic stop was nevertheless complete" (345 Ill. App. 3d at 842) even though the temperature in that case was -9 degrees. *Staley*, 334 Ill. App. 3d at 360, 778 N.E.2d at 363.

The United States Supreme Court has stated:

"The hazard of accidental injury from passing traffic to an officer standing on the driver's side of the vehicle may also be appreciable in some situations. Rather than conversing while standing exposed to moving traffic, the officer prudently may prefer to ask the driver of the vehicle to step out of the car and off onto the shoulder of the road where the inquiry may be pursued with greater safety to both." *Mimms*, 434 U.S. at 111, 54 L. Ed. 2d at 337, 98 S. Ct. at 333.

Although our facts here do not indicate any particular hazardous conditions, the majority's holding makes no exception for such situations. The majority now forces police officers to brave inclement weather and roadside conditions when returning a driver's license or issuing citations, unable to ask a driver out of the car prior to the stop's completion.

Here, Officer Davis asked defendant to step out of the car roughly six minutes after stopping the vehicle. After Officer Davis asked defendant to "hop on out" of the car, but before he could complete the traffic stop, subsequent events in quick succession led to the discovery of incriminating evidence on defendant's person. The trial court's conclusion that the traffic stop was completed was therefore against the manifest weight of the evidence. Further, I would find Officer Davis had probable cause to arrest defendant when defendant volunteered he possessed cannabis and a smoking pipe resulting in the subsequent discovery of those items on his person. I would therefore reverse the trial court's judgment.