2007 UT App 292

**STATE of Utah, Plaintiff and Appellant,**

v.

**Robert WEAVER, Defendant and Appellee.**

**No. 20060801–CA.**

Court of Appeals of Utah.

Sept. 13, 2007.

disclose all its steps in reaching the challenged awards prevents us from properly reviewing the awards on appeal.

Mark L. Shurtleff, atty. gen., and Kenneth A. Bronston, asst. atty. gen., Salt Lake City, for Appellant.

Robert Weaver, St. George, Appellee Pro Se.

Before Judges BILLINGS, McHUGH, and ORME.

## OPINION

BILLINGS, Judge:

¶1 The State of Utah appeals the trial court's order dismissing with prejudice four misdemeanor charges against Defendant Robert Weaver. On appeal, the State claims that the trial court erred in granting Defendant's motion to suppress because the lower court incorrectly concluded that a sheriff's deputy violated Defendant's Fourth Amendment rights when the deputy asked Defendant to exit his vehicle after the deputy had determined that the vehicle registration was valid. We affirm.

## BACKGROUND

¶ 2 On September 6, 2005, in Washington County, Utah, Sergeant Dan Endter contacted Washington County Sheriff's Deputy Mike Mitchell to inform him that he had observed a vehicle stop in the middle of a roadway for no apparent reason. Sergeant Endter apprised Deputy Mitchell that he had checked the vehicle's license plates and discovered that the car's Nevada license plates did not match the registered make of the car. Specifically, Sergeant Endter told Deputy Mitchell that although the observed vehicle was a Chrysler, the license plates were registered to a Cadillac. Because Sergeant Endter was transporting a prisoner at the time he observed the vehicle, he could not conduct a traffic stop, and he asked Deputy Mitchell to assist him.

¶ 3 Deputy Mitchell located the vehicle, checked the car's license plates, and confirmed that they belonged to a Cadillac, not a Chrysler. Deputy Mitchell subsequently initiated a traffic stop on grounds of a possible false registration. With his headlights on and emergency lights activated, Deputy Mitchell pulled up behind the vehicle and directed it to stop. Deputy Mitchell approached the vehicle and asked Defendant, the driver of the vehicle, for his license, the vehicle's registration, and proof of insurance. Defendant produced the requested documentation. At this time, Defendant was sitting inside the vehicle, along with a passenger.

¶ 4 After reviewing the requested documentation from Defendant and the vehicle identification number on the dashboard, Deputy Mitchell determined that the documentation all matched Defendant and the Chrysler. Deputy Mitchell subsequently returned to his vehicle with Defendant's documentation and contacted dispatch. Dispatch informed Deputy Mitchell that the license plates showed up in the system as being registered to a Cadillac. Deputy Mitchell then told dispatch that the registration information Deputy Mitchell had in hand was correct and that he was going to inform Defendant to contact the Nevada Division of Motor Vehicles to get it straightened out because "something's wrong."

¶ 5 Deputy Mitchell then exited his vehicle with Defendant's papers and again approached Defendant's car. When he reached the car, Deputy Mitchell asked Defendant to come talk to him for a minute. Defendant agreed, exited the car, and followed Deputy Mitchell to the rear of the vehicle. There, Deputy Mitchell pointed to the vehicle's license plates and then turned to Defendant to explain the problem with the plates. Approximately twenty seconds into this conversation, Deputy Mitchell apparently smelled alcohol on Defendant's breath and asked Defendant if he had been drinking. Defendant told Deputy Mitchell he had consumed a beer.

¶ 6 Deputy Mitchell subsequently performed field sobriety tests and a portable breath test. A fellow deputy searched Defendant's car and found a small, glass vial containing suspected cocaine residue, some marijuana, a crack pipe, two marijuana pipes, rolling papers, two razor blades, and a lighter. The deputies arrested Defendant. He was charged with possession of controlled substances and drug paraphernalia and for driving under the influence of alcohol and/or drugs.

¶ 7 Defendant subsequently moved to suppress the evidence obtained during the traffic stop. Following an evidentiary hearing, the trial court granted Defendant's motion. In its conclusions of law, the trial court determined:

> Deputy Mitchell had a reasonable basis to stop ... [D]efendant's vehicle based on the discrepancy involving the license plate and the information obtained from dispatch ... [but] reasonable suspicion ceased when Deputy Mitchell made the determination that the information was valid and he informed dispatch that he intended to return ... [D]efendant's license and registration and tell him to contact Nevada DMV. The extended inquiry, wherein ... Defendant was asked to exit his vehicle, was a violation of [Defendant's] [F]ourth [A]mendment constitutional rights against unlawful searches and seizures. [Deputy] Mitchell offered no reasonable articulable suspicion at the hearing or at the time of the detention that ... [D]efendant had committed

or was about to commit a crime or to explain his need for further inquiry. Any further detention for questioning after the initial fulfillment of the purpose of the initial traffic stop, which was to inquire about the registration, was not justified under the [F]ourth [A]mendment.

The trial court thus dismissed Defendant's case with prejudice. The State appeals.

## ISSUE AND STANDARDS OF REVIEW

¶ 8 The State argues that the trial court incorrectly concluded that Deputy Mitchell violated Defendant's Fourth Amendment rights in asking him to exit the vehicle after the deputy had concluded that Defendant's registration was valid. "In cases involving Fourth Amendment questions under the United States Constitution, we review mixed questions of law and fact under a correctness standard." *State v. Worwood,* 2007 UT 47, ¶ 11, 164 P.3d 397. We review "[f]actual findings underlying a motion to suppress ... for clear error." *Id.* at ¶ 12.

## ANALYSIS

¶ 9 The State claims the trial court improperly granted Defendant's motion to suppress. Specifically, the State argues that the trial court erred in concluding that the traffic stop was complete after Deputy Mitchell determined that the registration was valid, and therefore the deputy's request that Defendant exit the vehicle to discuss the discrepancy between the license plates and the make of the vehicle exceeded the scope of the initial detention and violated Defendant's Fourth Amendment rights.

¶ 10 "The Fourth Amendment allows for three different kinds of police-citizen encounters." *Id.* at ¶ 21. Each of these three types of encounters "permit[s] a different degree of intrusion and requir[es] a different level of justification." *Id.* Here, we are concerned with an investigative detention, referred to as a level two stop, *see id.* at ¶ 22, that is only justified when "an officer 'has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity.'" *Id.* at ¶ 23 (quoting *State v. Markland,* 2005 UT 26, ¶ 10, 112

P.3d 507) (additional quotations and citation omitted). It is the State's burden to "prov[e] the reasonableness of the officer's actions during an investigative detention." *Id.*

¶ 11 In determining whether an officer acted reasonably during an investigative detention, we consider (1) whether "the officer's initial stop [was] justified" and (2) whether the officer's "subsequent actions [were] within the scope of the circumstances justifying the stop." *City of St. George v. Carter,* 945 P.2d 165, 168 (Utah Ct.App.1997); *see also Worwood,* 2007 UT 47 at ¶ 25, 164 P.3d 397. Here, the parties do not contest the trial court's determination that Deputy Mitchell had reasonable suspicion to initially detain Defendant concerning a possible false registration, and thus we focus our analysis on whether Deputy Mitchell's subsequent actions exceeded the scope of the initial detention.

¶ 12 We first emphasize that, "the length and scope of the detention [must be] '*strictly tied to and justified by* the circumstances which rendered [the detention's] initiation permissible.'" *Worwood,* 2007 UT 47 at ¶ 25, 164 P.3d 397 (emphasis added) (quoting *Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)) (additional quotations and citation omitted). Second, we note that "during a traffic stop an officer 'may request a driver's license and vehicle registration, conduct a computer check, and issue a citation.'" *State v. Hansen,* 2002 UT 125, ¶ 31, 63 P.3d 650 (quoting *State v. Lopez,* 873 P.2d 1127, 1132 (Utah 1994)). An officer may also ask a driver to exit the vehicle. *See Pennsylvania v. Mimms,* 434 U.S. 106, 111 & n. 6, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) ("[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."). Importantly, however, "[o]nce the purpose of the initial stop is concluded ... the person must be allowed to depart." *Hansen,* 2002 UT 125 at ¶ 31, 63 P.3d 650. Thus, "an officer should not further detain a driver once the driver has produced a valid driver's license and evidence of entitlement to use the vehicle." *State v. O'Brien,* 959 P.2d 647, 649 (Utah Ct.App.

1998) (additional quotations and citations omitted); *see also Hansen,* 2002 UT 125 at ¶ 32, 63 P.3d 650 ("After [the o]fficer ... verified [the defendant's] license and registration and completed a computer check, the purpose for the initial traffic stop [for lack of insurance] was concluded," and thus the continued encounter was illegal without some other circumstance to justify the officer's further questioning); *State v. Bissegger,* 2003 UT App 256, ¶ 18, 76 P.3d 178 (noting that "[a]fter [the o]fficer ... verified the driver license and registration and completed a computer check, the purpose for the initial traffic stop [for an expired registration] was concluded."). " 'Any further temporary detention for investigative questioning after [fulfilling] the purpose for the initial traffic stop' constitutes an illegal seizure, unless an officer has probable cause or a reasonable suspicion of a further illegality." *Hansen,* 2002 UT 125 at ¶ 31, 63 P.3d 650 (alteration in original) (quoting *State v. Godina–Luna,* 826 P.2d 652, 655 (Utah Ct.App.1992)).

■■■ ¶ 13 Under this legal framework, the initial detention concluded when Deputy Mitchell confirmed that Defendant's documentation was valid and informed dispatch that he was going to tell Defendant to contact the Nevada DMV to straighten out the problem with the license plates. *See id.* at ¶ 32; *see also O'Brien,* 959 P.2d at 649. Thus, because the stop concluded when Deputy Mitchell verified that Defendant's license and right to use the vehicle were valid, Deputy Mitchell's subsequent request that Defendant exit the vehicle rendered the detention "longer than [was] necessary to effectuate the purpose of the stop," *Carter,* 945 P.2d at 169–70, and "constitute[d] an illegal seizure" without further proof of "probable cause or reasonable suspicion of a further illegality," *Hansen,* 2002 UT 125 at ¶ 31, 63 P.3d 650.[1]

¶ 14 Notably, the State claims that Deputy Mitchell needed Defendant to exit the vehicle in order to show Defendant that the license plates did not match the vehicle. Although

one could imagine circumstances where an officer might actually need to conduct a physical demonstration, such facts do not exist here. In the video of the stop, Deputy Mitchell merely points at the rear license plate and then turns to Defendant to explain the inconsistency, thus revealing that no physical demonstration was necessary. Here, there was simply nothing left for Deputy Mitchell to do after determining Defendant's documentation was valid but return the documents and verbally inform Defendant of the discrepancy between the plates and the vehicle. *See United States v. Lawrence,* No. 06–30014, 2006 WL 2591015, at * *3–4, 2006 U.S. Dist. LEXIS 67533, at * *10–11 (W.D.La. July 20, 2006) (holding that the officer's prolonged detention of the defendant was unreasonable because after determining that the defendant and her passenger "were not subject to any outstanding warrants and that the vehicle was not stolen[,] ... there was nothing left to do with regard to the initial stop for speeding other than to issue a citation or merely administer a warning"); *Illinois v. Miller,* 345 Ill.App.3d 836, 281 Ill.Dec. 206, 803 N.E.2d 610, 615 (2004) (holding that the stop was complete, and the officer's request that the defendant exit the vehicle was unnecessary to effectuate the purpose of the stop, where the officer had determined the traffic offense, verified the driver's license and insurance, and "had nothing else to do at that point other than return [the] defendant's documents to him").

¶ 15 We therefore affirm the trial court's order granting Defendant's motion to suppress and its dismissal of the charges against Defendant.

¶ 16 WE CONCUR: CAROLYN B. McHUGH and GREGORY K. ORME, Judges.

---

1. The State argues in the alternative that there was no illegal seizure because Deputy Mitchell had reasonable suspicion of further illegality—specifically, that the car was stolen. However, except for Deputy Mitchell's testimony that it was possible that despite the valid documentation, "[Defendant was] not giving [him] straight an- swers," the State fails to provide, and we do not find, record support for this proposition. *Cf. State v. Worwood,* 2007 UT 47, ¶ 23, 164 P.3d 397 ("Reasonable suspicion requires a particularized and objective basis, supported by specific and articulable facts." (quotations and citation omitted)).